UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SEBASTIAN RENOJ ORDONEZ,
     Petitioner

  v.

KENNETH GENALO, NYC Director,
 Enforcement & Removal Operations,
U.S. Immigration and Customs Enforcement;

TODD LYONS, Acting Director, U.S. Immigration and
Customs Enforcement;

KRISTI NOEM, Secretary of the U.S. Department of
Homeland Security; and
PAMELA BONDI, Attorney General of the United States,
    Respondents.

_____

(Emergency Application)

Case No. _____

## PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND EMERGENCY MOTION FOR ORDER TO SHOW CAUSE & TEMPORARY RESTRAINING ORDER

1. Petitioner Sebastian Renoj Ordonez ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves for emergency relief by Order to Show Cause and Temporary Restraining Order.

2. ICE seized him today on the streets of Brooklyn in a warrantless arrest and is now detaining him without any contemporaneous, individualized custody determination as required by the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the governing detention statutes and regulations.

3. Petitioner seeks immediate habeas relief, including

       (i) an order prohibiting transfer,

1

(ii) an order compelling Respondents to produce Petitioner and identify his precise location,

(iii) an order compelling production of the DHS administrative record (A-file) and all arrest/custody documentation, and

(iv) an order requiring a lawful custody determination within 24–48 hours or, in the alternative, Petitioner's immediate release.

<u>PRELIMINARY STATEMENT</u>

4. This is an emergency habeas case about a basic constitutional and statutory boundary: the Government may not stop a person on a public street, seize him without presenting a warrant or articulating lawful cause, and then detain him while refusing to disclose where he is and without any prompt, individualized custody determination required by the immigration detention framework.

5. Civil immigration detention is a profound deprivation of liberty, and due process demands meaningful safeguards at the moment the Government chooses to restrain someone's freedom.

6. Courts in this District repeatedly grant habeas relief where ICE detains people without making the individualized assessment that § 1226(a) and the implementing regulations require, and where ICE attempts to justify detention after the fact rather than through contemporaneous process. See, e.g., Lopez Benitez v. Francis, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (Ho, J.) (granting habeas relief; explaining that due process must constrain the Government's wide discretion to detain under § 1226(a)); Kelly v. Almodovar, No. 25 Civ. 6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025) (Torres, J.) (ordering immediate release where ICE's process was defective and stressing that post-hoc "re-determination" is not a substitute for initial deliberative custody decision); Valdez v. Joyce, No. 25 Civ. 4627, 2025 WL 1707737 (S.D.N.Y. June 18, 2025) (Daniels, J.) (granting habeas; ordering immediate release in a re-detention/no-process scenario); Chipantiza-Sisalema v. Francis, No. 25 Civ.

5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (Torres, J.) (granting habeas; ordering immediate release); Gonzalez v. Joyce, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025) (Torres, J.) (granting relief and rejecting detention practices inconsistent with lawful process).

7. Petitioner is currently incommunicado "in transit," and ICE has refused to provide his precise location. That alone jeopardizes this Court's ability to grant effective relief.

8. Petitioner therefore seeks immediate judicial intervention to prevent transfer, compel disclosure, require production, and enforce the statutory and constitutional requirement of a prompt, individualized custody determination.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody under the color of United States authority and challenges the legality of that custody as unconstitutional and in violation of statute and regulation

10. Venue is proper in the Southern District of New York because Petitioner was seized in New York, is believed to have been initially held at or processed through 26 Federal Plaza and/or related ICE facilities within this District, and Respondents direct, control, and administer Petitioner's detention and transfer decisions in and from this District.

11. This Court has authority to issue a temporary restraining order and preliminary injunctive relief "as law and justice require," including to prevent transfer that would impair the Court's jurisdiction and ability to order effective habeas relief.

## PARTIES

12. Petitioner Sebastian Renoj Ordonez is a noncitizen present in the United States.

13.  He has resided in New York for years, has a fixed address, and has no criminal charges.

3

14. Petitioner's permanent address is 1770 Bay Ridge Parkway, Apt. 3B, Brooklyn, NY 11204.

15. Respondent Kenneth Genalo is the NYC Director of Enforcement & Removal Operations, ICE, and is a legal custodian of Petitioner.

16. Respondent Todd Lyons is the Acting Director of ICE and is responsible for ICE detention policies and practices.

17. Respondent Kristi Noem is the Secretary of the Department of Homeland Security and is responsible for DHS policies and enforcement practices affecting detention.

18. Respondent Pamela Bondi is the Attorney General of the United States and is sued in her official capacity in connection with the federal custody at issue.


## FACTUAL ALLEGATIONS

19. On the morning of January 15, 2026, while leaving his home to go to his place of employment in Brooklyn, New York, Petitioner was stopped and apprehended by individuals later identified as ICE officers.

20. The officers did not present a warrant, did not articulate any lawful basis for the stop or arrest, and did not advise Petitioner of any rights.

21. Petitioner cooperated and engaged in no criminal conduct. Nevertheless, he was taken into custody, transported to an ICE facility, and remains detained.

22. Petitioner has no criminal charges.

23. Counsel and Petitioner's family have repeatedly attempted to obtain Petitioner's current location. ICE officials have not specified where Petitioner is, stating he is "in transit." The ICE detainee locator directs counsel to call ICE for details; ICE personnel transferred counsel to voicemail.Around 11:00 a.m. on

January 15, 2026, Petitioner made a brief call to his son stating he was detained and "held in Manhattan," which counsel believes referred to the ICE field office at 26 Federal Plaza.

24. Petitioner has remained detained without any meaningful opportunity to request release, and without any contemporaneous individualized custody determination as required by the detention statutes and implementing regulations.

25. Petitioner's warrantless street arrest and continued detention are arbitrary and unlawful, effected without due process of law and in violation of the Fourth and Fifth Amendments and the immigration detention statutes and regulations.

## CLAIMS FOR RELIEF
### CLAIM ONE

#### (Unlawful Warrantless Seizure and Arrest in Violation of the Fourth Amendment and 8 U.S.C. § 1357(a)(2))

26. The Fourth Amendment applies to civil immigration arrests in the interior of the United States. Warrantless civil immigration arrests are strictly limited, including by 8 U.S.C. § 1357(a)(2), which permits warrantless arrest only when statutory prerequisites are satisfied, including probable cause and the likelihood of escape.

27. Here, ICE officers stopped Petitioner on a public street while he was leaving his home, presented no warrant, articulated no probable cause, and provided no lawful basis for seizure. Petitioner's arrest was therefore unreasonable under the Fourth Amendment and ultra vires as a matter of statutory authority.

28. Because Petitioner's initial seizure was unlawful, his resulting custody is unlawful, and habeas relief is warranted to end an ongoing, unconstitutional deprivation of liberty.

### CLAIM TWO

#### (Detention Without a Contemporaneous, Individualized Custody Determination Violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1226(a) and Implementing Regulations)

5

29. Section 1226(a) authorizes discretionary detention or release pending removal decisions. Because the Government possesses broad discretion to decide whether to detain, due process requires procedures that constrain arbitrary detention and ensure that discretion is actually exercised through an individualized assessment. See Lopez Benitez v. Francis, 2025 WL 2371588, at *10 (S.D.N.Y. Aug. 13, 2025) (Ho, J.) (explaining that due process must account for the Government's wide discretion to arrest and detain under § 1226(a)).

30. The governing regulatory scheme requires a prompt custody determination following arrest. ICE must decide—based on individualized facts—whether detention is necessary and whether release conditions can reasonably assure appearance and safety.

31. Courts in this District have held that when ICE detains a person but cannot show a contemporaneous, individualized custody determination, detention violates due process and the statutory/regulatory detention framework, and habeas relief is warranted.

32. In Kelly v. Almodovar, Judge Torres emphasized that an immigration-judge bond proceeding is a custody "re-determination" and is not a substitute for ICE's obligation to make the initial custody decision through a deliberative process prior to or contemporaneous with the loss of liberty. Kelly, 2025 WL 2381591, at *3.

33. Judge Bulsara's reasoning in Gopie v. Lyons is directly instructive on this point. There, the court granted the writ where ICE failed to make a lawful initial custody determination contemporaneous with arrest and attempted to justify detention after the fact.

34. The decision underscores that post-hoc paperwork is not a cure for a liberty deprivation already inflicted without lawful process. Gopie further explains—citing SDNY precedent—that habeas is available to remedy a defect in the process governing detention under § 1226(a).

35. Petitioner's case is stronger still. Unlike the common "redetention at a check-in" scenario, this case begins with a warrantless street stop and seizure. ICE then compounded that constitutional problem by holding Petitioner "in transit" without disclosing his location and without any prompt individualized custody determination.

36. Petitioner has a fixed residence, no criminal charges, longstanding ties, and a stable address. The Government's failure to make, document, and provide any contemporaneous individualized custody determination renders this detention arbitrary and unlawful.

Respondents cannot lawfully recharacterize Petitioner's interior street arrest in Brooklyn as mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2)(A) governs mandatory detention of certain noncitizens "seeking admission"—i.e., the statutory framework for inspection and admission—whereas § 1226(a) governs discretionary detention of noncitizens already present in the United States pending removal proceedings. In Lopez Benitez v. Francis, Judge Ho explained that § 1225(b)(2)(A) "requires mandatory detention of certain noncitizens' seeking admission' to the country," while § 1226(a) supplies "discretionary authority to detain other noncitizens who are 'already in the country.'" 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025). In other words, DHS cannot collapse the INA's two detention tracks to transform an interior apprehension into a border-inspection detention regime. Judge Torres applied that same rule in Gonzalez v. Joyce, holding that the petitioner was "not subject to mandatory detention as a noncitizen 'seeking admission' … under 8 U.S.C. § 1225, but rather may be subject to detention only on a discretionary basis under § 1226," expressly relying on Samb v. Joyce, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025). Accordingly, because Petitioner was seized inside the United States after years of residence—rather than encountered in the inspection/admission process—Respondents' only plausible detention authority is § 1226(a), which in turn requires a genuine, contemporaneous exercise of discretion and constitutionally adequate process; as Gonzalez further

explains, where there is "nothing to suggest that DHS exercised any discretion at all … in contravention of the basic procedural requirements of § 1226(a)," the detention is unlawful. 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (

quoting Lopez Benitez, 2025 WL 2371588, at *11).

<u>CLAIM THREE</u>

(Failure to Follow Mandatory Detention Regulations and Procedures
Renders Custody Unlawful Under Accardi)

37. Under Accardi v. Shaughnessy, 347 U.S. 260 (1954), when an agency fails to follow its own binding regulations that are intended to protect individual rights, agency action is unlawful.

38. The immigration detention scheme contains mandatory procedural protections for arrest processing and custody determinations. Where ICE fails to comply with those procedures—especially in the immediate aftermath of a warrantless arrest—continued detention is unlawful and habeas relief is warranted.

39. SDNY courts have repeatedly granted habeas relief and ordered immediate release when DHS/ICE's process is defective and the Government cannot show lawful custody authority and meaningful process. See, e.g., Chipantiza-Sisalema v. Francis, 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (ordering immediate release); Valdez v. Joyce, 2025 WL 1707737 (S.D.N.Y. June 18, 2025) (ordering immediate release).

<u>CLAIM FOUR</u>

(Immediate Release Is the Proper Habeas Remedy; A Belated Bond Hearing Does
Not Cure an Already-Completed Constitutional/Statutory Violation)

40. The "typical remedy" for unlawful executive detention is release. See Munaf v. Geren, 553 U.S. 674, 693 (2008), as applied by SDNY courts in this line of cases. See, e.g., Tumba Huamani v. Francis, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025) (granting habeas; ordering immediate release).

41. In SDNY's 2025 decisions, courts have repeatedly rejected the notion that a later immigration-court proceeding cures the absence of a lawful initial custody decision by ICE. Kelly explains that a bond hearing is not a substitute for ICE's initial deliberative decision. Kelly, 2025 WL 2381591, at *3. (Justia Dockets & Filings)

42. Gopie likewise rejects "process later" rationales in the context of § 1226(a) custody determinations and emphasizes that due process required an individualized custody determination at or before arrest, not after.

43. Petitioner therefore seeks immediate habeas relief that is effective now, including release absent proof of lawful arrest authority and a contemporaneous, individualized custody determination.

CLAIM FIVE

(Exhaustion Is Not Required Because Relief Is Urgent and
Administrative Remedies Are Inadequate and Futile)

44. Exhaustion is prudential in many immigration habeas contexts and is not required where administrative remedies are inadequate, futile, or incapable of addressing the constitutional injury at issue.

45. The gravamen here is the Government's warrantless seizure and detention without contemporaneous individualized custody determination and without even disclosing Petitioner's location. Administrative bond processes cannot retroactively supply the constitutional prerequisites for a street seizure, cannot cure a completed due-process violation, and cannot restore the statutory requirement that ICE actually exercise individualized discretion at the moment it deprives a person of liberty.

46. SDNY decisions in this line recognize that habeas remains available to challenge a defect in the process governing detention under § 1226(a). See Lopez Benitez, 2025 WL 2371588; see also SDNY decisions granting immediate release where ICE's process was defective.

<u>CLAIM SIX</u>

(Due Process Requires Immediate Production of the DHS Administrative Record,
Including the A-File, Arrest Documentation, and Custody Records)

47. Meaningful habeas review is impossible where the Government refuses to disclose where it is holding the detainee and withholds the basic record of arrest and custody authority. Petitioner seeks prompt production of the DHS administrative record, including the A-file, Form I-200/I-286 (if any), any NTA (if any), any "Notice of Custody Determination," any custody classification notes, any statements or reports by arresting officers, and any transfer orders.

48. Courts regularly compel production of materials necessary to test the legality of custody in expedited habeas proceedings, particularly where detention is ongoing and irreparable harm is accruing daily.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Petitioner respectfully requests that the Court:

A. Issue an Order to Show Cause and Temporary Restraining Order prohibiting Respondents from transferring Petitioner into or out of this District and requiring Respondents to identify Petitioner's precise location immediately;

B. Grant the writ of habeas corpus and order Petitioner's immediate release, or, at minimum, order Respondents to conduct a lawful, contemporaneous custody determination within 24–48 hours supported by documentation showing lawful arrest authority and individualized deliberation, and order release if Respondents cannot make that showing;

C. Order Respondents to produce Petitioner forthwith and to produce the DHS administrative file

(A-file) and all arrest/custody and transfer records immediately;

D. Grant such other relief as the Court deems just and proper.

Dated: January 15, 2026
New York, New York

Respectfully submitted,

MUSA-OBREGON LAW P.C.

By: /s/ S. Michael Musa-Obregon
S. Michael Musa-Obregon, Esq.
Counsel for Petitioner
michael@musa-obregon.com

<u>EMERGENCY MOTION FOR ORDER TO SHOW CAUSE</u>
<u>AND TEMPORARY RESTRAINING ORDER</u>

Petitioner respectfully moves, on an emergency basis, for an Order to Show Cause and

Temporary Restraining Order (1) prohibiting transfer, (2) compelling Respondents to identify

Petitioner's location and produce him, and (3) compelling production of the A-file and

arrest/custody documentation.

<u>STANDARD FOR EMERGENCY RELIEF</u>

A temporary restraining order and preliminary injunction are warranted where Petitioner shows

likelihood of success on the merits, irreparable harm, a balance of equities in his favor, and that

relief serves the public interest.

<u>IRREPARABLE HARM</u>

Petitioner suffers irreparable harm each day he remains confined without lawful authority and

without the constitutionally required process. The Second Circuit recognizes that the loss of

liberty constitutes irreparable injury as a matter of law. Petitioner also faces the immediate risk

of transfer while "in transit," which would frustrate counsel's access and impair the Court's

ability to grant effective habeas relief.

<u>LIKELIHOOD OF SUCCESS</u>

Petitioner is likely to succeed because the record currently reflects a warrantless street arrest with

no articulated basis and continued detention without any contemporaneous individualized

custody determination. SDNY courts have repeatedly granted habeas relief and ordered

immediate release when ICE's detention process is defective, and the Government cannot show

lawful individualized decision-making. See <u>Lopez Benitez,</u> 2025 WL 2371588; Kelly, 2025 WL

2381591; <u>Valdez,</u> 2025 WL 1707737; <u>Chipantiza-Sisalema,</u> 2025 WL 1927931; Gonzalez, 2025

12

WL 2961626; Tumba Huamani, 2025 WL 3079014; Huang v. Almodovar, No. 25 Civ. 9346, 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025).

BALANCE OF EQUITIES AND PUBLIC INTEREST

The equities overwhelmingly favor preventing unconstitutional detention. The public interest is not served by detaining individuals without lawful process and statutory compliance, and it is served by enforcing constitutional and statutory limits on civil immigration enforcement.

WHEREFORE, Petitioner respectfully requests that the Court enter the Proposed Order submitted below.

MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY
OSC/TRO AND HABEAS RELIEF

## ARGUMENT

I. Petitioner's Warrantless Street Arrest and Detention Without a Contemporaneous,
Individualized Custody Determination Violates the Fourth Amendment,
the Fifth Amendment, and the Immigration Detention Statutes

1. This case presents a paradigmatic violation of constitutional and statutory limits on civil

immigration enforcement. ICE officers stopped Petitioner on a public street, did not present a

judicial or administrative warrant, did not articulate probable cause, and then detained him while

refusing to identify his location and without any prompt, individualized custody determination.

2. That sequence is unlawful under the Fourth Amendment, the Due Process Clause of the Fifth

Amendment, and the statutory/regulatory detention framework that governs discretionary civil

immigration detention.

A. The Fourth Amendment Applies to Interior Civil Immigration Arrests; Warrantless Arrest
Authority Is Narrow and Statutorily Constrained

3. Civil immigration enforcement does not occur in a constitutional vacuum. Inside the United

States, the Fourth Amendment governs seizures, and warrantless arrests must fall within narrow

exceptions.

4. Congress likewise limited ICE's warrantless arrest authority in 8 U.S.C. § 1357(a)(2), which

requires statutory prerequisites before an officer may arrest without a warrant. When ICE cannot

demonstrate those prerequisites—especially probable cause and circumstances justifying

warrantless action—the seizure is unreasonable.

5. Here, ICE officers did not present any warrant and did not articulate any lawful basis for

stopping and arresting Petitioner as he left his home for work. That is the hallmark of an

unreasonable seizure, and it cannot serve as the foundation for lawful civil detention.

<u>The Fifth Amendment Forbids Arbitrary Civil Detention; § 1226(a) Requires ICE To Make an
Individualized Custody Decision Before or At the Moment Liberty Is Taken</u>

6. The liberty interest in being free from government custody lies at the heart of due process.

Where the Government has discretion to detain or release under § 1226(a), due process demands

safeguards that ensure discretion is actually exercised and not replaced by automatic detention.

7. In <u>*Lopez Benitez v. Francis*</u>, Judge Ho explained that § 1226(a)'s breadth triggers due-process

constraints precisely because the Government has wide discretion to decide who to detain. Lopez

Benitez, 2025 WL 2371588, at *10.

8. In *Kelly v. Almodovar*, Judge Torres stressed that the immigration-judge bond process is a

custody "re-determination" and is "no substitute" for ICE's obligation to engage in a deliberative

process before or contemporaneously with the initial decision to detain. *Kelly,* 2025 WL

2381591, at *3.)

9. Judge Bulsara's decision in *Gopie v. Lyons* synthesizes and applies this principle. Gopie grants

habeas relief where ICE failed to make a valid initial custody determination and attempted to

rely on post-hoc process. Gopie holds that due process required ICE to make a custody

determination at or before arrest and that the Government's after-the-fact approach does not

satisfy the statutory and constitutional requirements that constrain discretionary detention.

10. The same defect is present here, but with added constitutional severity: a warrantless street

arrest, followed by continued detention while ICE refuses to identify Petitioner's location and

provides no documentation of any individualized custody analysis. That violates the Fifth

Amendment and exceeds what § 1226(a) and its implementing regulations permit.

C. <u>SDNY's 2025 Habeas Decisions Repeatedly Ordered Immediate Release Where ICE
Detained Without Lawful Process or Where ICE's Process Was Defective</u>

11. SDNY courts in 2025 repeatedly granted habeas relief and ordered immediate release where ICE detained people under discretionary detention authority but failed to provide lawful process or demonstrate a valid individualized custody decision.

12. In *Valdez v. Joyce*, Judge Daniels granted habeas and ordered immediate release in a case In *Chipantiza-Sisalema v. Francis,* Judge Torres granted habeas and ordered immediate release. Chipantiza-Sisalema, 2025 WL 1927931.

13. In Gonzalez v. Joyce, Judge Torres granted relief in a case involving arrests/detention under challenged practices and reiterated that detention cannot rest on post-hoc rationalizations where the statutory and due-process requirements of discretionary detention are not satisfied. Gonzalez, 2025 WL 2961626.

14. In *Tumba Huamani v. Francis*, Judge Liman granted habeas and ordered immediate release, applying the principle that where detention is unlawful, release is the appropriate remedy. Tumba Huamani, 2025 WL 3079014.

15. In *Huang v. Almodovar*, Judge Ho ordered release and addressed recurring defects in ICE detention practices in this line. *Huang*, 2025 WL 3295912.

16. These authorities support the same conclusion here: ICE's failure to provide a lawful basis for the initial seizure and to make any contemporaneous individualized custody determination renders the detention unlawful and warrants immediate habeas relief.

II. Immediate Release Is the Proper Remedy; A Belated Bond Hearing Does Not Cure the
Completed Constitutional and Statutory Violations

17. Respondents will likely argue that Petitioner can seek redress through an immigration-judge bond proceeding. SDNY has rejected that move where the problem is the absence of a valid initial custody determination and other defects at the point of detention.

18. Kelly explains that bond is a re-determination mechanism and does not replace ICE's obligation to make the initial custody decision properly. *Kelly,* 2025 WL 2381591, at *3.

19. *Gopie* likewise treats the initial-custody defect as dispositive and grants the writ.

20. Accordingly, Petitioner seeks effective relief now: release unless and until Respondents can demonstrate lawful arrest authority and a contemporaneous individualized custody determination supported by documentation.

III. <u>Exhaustion Should Not Be Required Because Administrative Remedies Are Inadequate and Futile Given the Completed Constitutional Violations and the Emergency Posture</u>

21. Even where exhaustion may sometimes be considered prudential, it is not appropriate here. Petitioner challenges the legality of the seizure and detention itself, and ICE's refusal to provide location information and custody documentation renders any administrative route inadequate to prevent irreparable harm. Requiring exhaustion would prolong unconstitutional confinement and risk transfer that defeats the Court's jurisdiction and counsel access.

IV. <u>The Court Should Order Immediate Production of Petitioner and Immediate Production of the DHS Administrative Record (A-File) and Arrest/Custody Materials</u>

22. ICE's refusal to identify Petitioner's location and failure to produce basic custody documentation makes meaningful habeas review impossible. The Court should order immediate production of Petitioner (or, at minimum, immediate disclosure of his exact location and custodian), and immediate production of the A-file and all materials bearing on arrest authority, custody determination, and transfer.

CONCLUSION

For the foregoing reasons, the Court should grant the emergency OSC/TRO and grant the writ, including ordering immediate release or, at minimum, compelling a lawful custody

determination within 24–48 hours supported by documentary proof and ordering release if

Respondents cannot comply.

Dated: January 15, 2026

New York, New York

Respectfully submitted,

MUSA-OBREGON LAW P.C.

By: /s/ S. Michael Musa-Obregon
S. Michael Musa-Obregon, Esq.
michael@musa-obregon.com

[PROPOSED] ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

Upon the verified petition for writ of habeas corpus, the emergency motion, and the supporting memorandum, and good cause appearing, it is hereby:

ORDERED that Respondents shall appear and show cause before this Court on _____, 2026, at _____ (a.m./p.m.), why a writ of habeas corpus should not issue and why the relief requested should not be granted; and it is further

ORDERED that, pending the hearing on the Order to Show Cause, Respondents, their agents, employees, and all persons acting in concert with them are TEMPORARILY RESTRAINED from transferring Petitioner into or out of the Southern District of New York, and from removing Petitioner from the United States; and it is further

ORDERED that within 4 hours of service of this Order, Respondents shall file on ECF and serve on Petitioner's counsel a letter stating (i) Petitioner's exact physical location, (ii) the name, title, and address of Petitioner's immediate custodian, and (iii) all planned transfers within the next 72 hours; and it is further

ORDERED that within 24 hours of service of this Order, Respondents shall produce to Petitioner's counsel and file under seal if necessary: (i) Petitioner's complete DHS administrative file ("A-file"), (ii) any arrest warrant or administrative warrant (including Form I-200) and all supporting documentation, (iii) any NTA and proof of service, (iv) any Notice of Custody Determination, custody classification assessment, or custody notes, (v) all documents reflecting

any individualized custody determination made before or contemporaneously with arrest, and (vi) all transfer/transportation records since January 15, 2026; and it is further

ORDERED that within 48 hours of service of this Order, Respondents shall either (a) demonstrate through sworn declaration(s) and produced documentation that ICE made a contemporaneous, individualized custody determination consistent with § 1226(a) and the governing regulations and that Petitioner's seizure and detention were lawful, or (b) release Petitioner immediately; and it is further

ORDERED that Respondents shall produce Petitioner for any hearing the Court schedules, including by video if necessary, and shall ensure counsel access sufficient to permit meaningful consultation prior to any hearing.

SO ORDERED.

Dated: _____, 2026
New York, New York

United States District Judge

20

<u>CERTIFICATE OF SERVICE</u>

I certify that on January 15, 2026, I caused the foregoing Verified Petition, Emergency Motion,

Memorandum of Law, and Proposed Order to be served by electronic mail and/or overnight

service on the United States Attorney's Office for the Southern District of New York, Civil

Division, and by electronic mail and/or overnight service on counsel for Respondents, and I

further caused service on Respondents in their official capacities via the U.S. Attorney as

permitted by applicable rules.

<u>/s/ S. Michael Musa-Obregon</u>
S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.

michael@musa-obregon.com